IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON WAYNE GOWEN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20-cv-00247 |
| | ) | |
| v. | ) | |
| | ) | |
| MAJOR ENOCHS, *et al.*, | ) | By: Elizabeth Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Jason Wayne Gowen, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. Gowen's claims stem from events that occurred while he was a pretrial detainee at the Lynchburg Adult Detention Center (LADC). Gowen's complaint names five defendants: Major Enochs, Lieutenant Winfield, Sergeant P.R. Fouché, Corporal Taylor, and Officer D.M. Schulegger. Enochs and Winfield are supervisory officers at LADC. The allegations against the last three defendants arise solely from their participation as members of the Institutional Classification Committee (ICC) that met on October 30, 2018, and determined that Gowen should be placed in administrative segregation.

Pending before the court is a motion to dismiss filed by defendants in which they seek dismissal of all claims against them. (Dkt. No. 28.) Gowen filed a response (Dkt. No. 38), defendants filed a reply (Dkt. No. 39), and Gowen filed a sur-reply with the court's permission (Dkt. No. 42; *see also* Dkt. No. 41 (granting permission)). The motion is thus ripe for disposition. For the reasons set forth in this opinion, the motion to dismiss will be granted in part and denied in part. The court will deny the motion to dismiss Gowen's due process claims against Winfield and the three ICC members, but will grant it as to all other claims, including all claims against Enochs.

I.   BACKGROUND

**A. Factual Background**[1]

Gowen alleges that he filed two requests and a grievance in August and September 2018 regarding not being issued a property box during intake. (Compl. ¶¶ 11–13, Dkt. No. 1.)  After he did not receive a response, Gowen also filed a request complaining about the lack of response, to which LADC staff again did not respond. (*Id.* ¶ 14.)

On September 26, 2018, LADC's air conditioning was broken and the outside temperature was 79 degrees Fahrenheit.  That morning, inmates requested authorization to leave the tray slots open in cells for air circulation.  Enochs authorized opening the cell tray slots, and Winfield checked cells with a digital thermometer and then brought in industrial fans to help circulate air.  (*Id.* ¶¶ 17–22.)

At approximately 1:30 p.m. on the same date, Gowen was removed from his pod and placed in A-pod in the intake area.  He alleges that this was done to investigate him.  At the time, Winfield referred to him as a "management problem," and said, "So you wanna be a ring leader, huh? We've got a place for ring leaders." (*Id.* ¶¶ 23, 28.)  Gowen does not explain why Winfield believed he was a management problem or a ring leader, nor does he identify any other actions that would have caused him to be placed under investigation.  He makes clear in his later briefing that there was no incident or event that preceded the investigation and that he does not know why he was considered a "management problem."

On the same date, Gowen received a written "Notification of Referral to ICC," notifying him that he would be brought before the ICC and considered for administrative segregation

---

[1] The facts are taken from Gowen's complaint for purposes of ruling on the motion to dismiss.  The complaint also includes a number of sworn "declarations" by him and one from a fellow inmate on different topics related to his claims or his efforts to exhaust them.

because of a "management problem/pending investigation." (Dkt. No. 1-1, at 1.) As he was notified he could, Gowen requested witnesses for the ICC hearing: Enochs and two specific inmates. He also orally requested the assistance of a staff advocate, but he was told he would be able to make that request at a later date.[2]

Gowen was housed in A-pod until October 4, 2018, when a cell in the segregation unit became available. On October 30, 2018, the ICC hearing was held. During that hearing, Winfield presented evidence to the ICC, although neither the paperwork nor Gowen explains what that evidence was. (Dkt. No. 1-1, at 2–4.) The paperwork says that Gowen presented his case, but Gowen alleges that he objected to the hearing taking place at all because two of his witnesses were unavailable. The committee heard from the third witness. Gowen also alleges that the hearing was purposefully scheduled on a date when his witnesses were unavailable, although the committee heard from the third witness. At the conclusion of the hearing, the ICC recommended administrative segregation for 90 days "unless . . . Administration clears him prior to that." (*Id.* at 4.) No appeal was available from that decision. Gowen was then held in administrative segregation until January 30, 2019.

Gowen's complaint also describes the conditions of his confinement while housed in the A-pod from September 26, 2018, to October 4, 2018, awaiting his hearing. He claims that he had no window, the lights were always kept on, there was no hot water in his cell or in showers, and he had no access to hair clippers or razors. Then, while he was in segregation—both before his October 30 hearing and for the 90 days afterward—he and other inmates were supposed to be

---

[2] Although Gowen claims that there was no "event" or "incident," this argument is undermined by the fact that he included the allegations regarding the air conditioning in his complaint, implicitly tying the inmates' complaints about the air conditioning to his referral to the ICC. Also, the hearing report describes Gowen's statement at the hearing, which also referenced the inmates' complaints about the air conditioner. Also, if he did not know the basis for his referral, then it is unclear how he could have determined who his witnesses should be.

given one hour and fifteen minutes recreation daily, either in the common room or the recreation "cage." During this recreation time, he was not allowed to socialize with other inmates, but he could take a shower, clean his cell, and had weekly access to a razor and hair clippers. (Compl. ¶¶ 48, 49.) He alleges that he was "habitually" denied this recreation time, shower privileges, shaving and hair supplies, cleaning supplies, and access to the phone. This denial occurred on approximately 30 to 45 days during the time he was segregation, and 10 to 14 of those days were consecutive. (*Id.* ¶¶ 53, 62.) Additionally, at one point his commissary and phone privileges were temporarily suspended without any charge or hearing, although they were reinstated after he complained. (*Id.* ¶¶ 56–59.)

As a result of his months in segregation without any meaningful human contact, Gowen alleges that he suffered mental health problems, including depression, auditory and visual hallucinations, and paranoia. These conditions required treatment with three medications, including an anti-psychotic. He also gained 55 pounds (going from 180 pounds to 235 pounds), developed high blood pressure, and suffered from dizzy spells and a skin condition. (*Id.* ¶¶ 66–69.) Since his release from segregation, he no longer receives mental health medications, his weight is down to 205 pounds, and his blood pressure is only slightly elevated. (*Id.* ¶ 71.)

**B. Gowen's Claims**

Taking into consideration both Gowen's complaint, which lists certain legal claims, as well as his briefing in the case, which clarifies his claims, the court construes Gowen's complaint as asserting three claims. His first claim is a § 1983 claim alleging a Fourteenth Amendment due process violation against all defendants.[3] This claim focuses on his allegations that he received inadequate notice of the ICC hearing, that he was denied two of his witnesses, that the decision

---

[3] The Fourteenth Amendment applies to due process claims of pretrial detainees in state custody. *Williamson v. Stirling*, 912 F.3d 154, 173 n.15 (4th Cir. 2018).

4

to place him in administrative segregation was erroneous, arbitrary, and punitive, and that he was not given an appeal. His second claim is a First Amendment claim against Enochs and Winfield, based on their failure to respond to his grievances. His third claim is a retaliation claim brought against all defendants. This claim alleges that defendants placed him in segregation in retaliation for his filing of grievances and encouraging other inmates to complain and to file grievances.

Defendants initially interpreted Gowen's complaint as also asserting a conditions-of-confinement claim. In his response to the motion to dismiss, however, Gowen unequivocally states that he is "not making a complaint on conditions of confinement," but only for due process. (Pl.'s Opp'n ¶ 24, Dkt. No. 38.) He explains that he included the denial of recreation, showers, and other basic personal hygiene items as evidence that there was a pattern of punishing him, even after he was in segregation. (Pl.'s Opp'n ¶ 29; Pl.'s Sur-reply 1, 10–11, Dkt. No. 42.)

## II. DISCUSSION

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[4] To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are

---

[4] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

**B. Due Process Claims**

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017). It appears that Gowen is asserting both substantive and procedural due process claims. On both, the Fourth Circuit's decision in *Williamson v. Stirling*, 912 F.3d 154, 175 (4th Cir. 2018), is instructive. As the *Williamson* court notes, the Supreme Court held in *Bell v. Wolfish*, 441 U.S. 520, 540 (1979), that pretrial detainees may not be subjected to "punishment" while in custody. Punishment must be distinguished, however, from "regulatory restraints," which are constitutionally permissible. *Williamson*, 912 F.3d at 174–75 (citing *Bell*, 441 U.S. at 537, 540). Specifically, disciplinary measures are permissible, and are not unconstitutional "punishment" under *Bell*, if they are intended to advance—and are reasonably related to—"the effective management of the detention facility." *Williamson*, 912 F.3d at 176 n.18.

"A pretrial detainee challenging individually imposed restrictions—as opposed to shared conditions of confinement—" generally pursues that challenge through a procedural due process claim. *Id.* at 174–75. Occasionally, though, "the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim." *Id.* at 175.

"In order to prevail on a substantive due process claim, the pretrial detainee must show that a particular restriction was "either (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate non-punitive governmental objection." *Id.* at 174; *see also Dilworth v. Adams*, 841 F.3d 246, 252 (4th Cir. 2016) (quoting *Martin v. Gentile*, 849 F.2d 863,

870 (4th Cir. 1988)). "Thus, although jail officials are entitled to impose discipline and promote internal security by placing restrictions on pretrial detainees, such measures must yet be rationally related to a legitimate governmental purpose, regardless of the procedural protections provided." *Williamson*, 912 F.3d at 176 (citing *Bell*, 441 U.S. at 539).

With regard to a procedural due process claim, a pretrial detainee's placement in segregation implicates his protected liberty interests.[5] Thus, segregation "may not be imposed without due process." *Dilworth*, 841 F.3d at 253. The procedural protections owed, however, differ depending on whether the segregation is disciplinary or administrative. Where a restriction is imposed to discipline a pretrial detainee, then he is entitled at least to the protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Id.* Specifically, *Wolff* requires: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67); *see also Dilworth*, 841 F.3d at 253.

Where segregation is imposed not for the pretrial detainee's own misconduct, but "for administrative purposes—which include managerial and security needs—the level of process" due is "diminished." *Williamson*, 912 F.3d at 175. At a minimum, though, the detainee is

---

[5] Defendants also argue, and Gowen appears to agree in his opposition (Pl.'s Opp'n ¶ 32), that pretrial detainees have no liberty interest in recreation, and so denial of recreation time cannot give rise to a due process violation. For support, defendants rely on *Lowe v. Lee*, No. 3:17-cv-448, 2017 WL 6030045 (W.D. La. Oct. 23, 2017), which addressed a pretrial detainee's being denied various privileges, and *Gray v. Stolle*, No. 3:11CV546, 2013 WL 4430915, at *6 (E.D. Va. Aug. 16, 2013), which held that a convicted prisoner had no liberty interest in having outdoor recreation or equipment. Numerous courts have held, however, that pretrial detainees are entitled to some recreation opportunities. *E.g.*, *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). Regardless of whether the repeated denials of recreation give rise to a separate, independent claim, they are relevant to the determination of whether the conditions imposed on Gowen were punitive in nature. *See Williamson*, 912 F.3d at 178–79 (explaining that, in determining whether a due process violation has occurred, the court must consider whether all the conditions of confinement and the length of time they were imposed were "excessive" in relation to any stated objective by prison administrators).

entitled to the protections set forth in *Hewitt v. Helms*, 459 U.S. 460, 465 (1983). Specifically, he must be given "some notice of the charges against him and an opportunity to present his views" to the deciding official, although that opportunity may be provided after the fact. *Williamson*, 912 F.3d at 176–77 (quoting *Hewitt*, 459 U.S. at 476). Once placed in segregation, moreover, inmates are entitled to periodic review of their confinement. *Hewitt*, 459 U.S. at 476, 477 n.9. Beyond that, "the precise level of process that is due in a given situation also depends on a balancing of interests" under the test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Williamson*, 912 F.3d at 177. Thus, the procedures provided must both "comply with *Hewitt* and satisfy the *Mathews* test." *Id.*

**1. Gowen's Substantive Due Process Claim**

To evaluate Gowen's substantive due process claim, the court must determine whether there was an express intent to punish or whether the segregation was consistent with a legitimate, non-punitive rationale. *Williamson*, 912 F.3d at 174–75. Defendants disclaim any intent to punish, and both Gowen and defendants repeatedly state that he was subjected to administrative segregation, not disciplinary segregation. Nonetheless, neither his characterization nor defendants' is dispositive.[6] *Tate v. Parks*, 791 F. App'x 387, 390 (4th Cir. 2019) ("[A] court may not simply accept the defendant's justification for placing a detainee in administrative segregation but must 'meaningfully consider whether the conditions of confinement were reasonably related to the stated objective, or whether they were excessive in relation thereto.'" (quoting *Williamson*, 912 F.3d at 178)). Gowen's point in arguing that his segregation was administrative appears to be that he did nothing wrong and that he was never charged with any

---

[6] As already noted, Gowen is entitled to additional due process protection if the decision made was disciplinary, rather than administrative. Thus, it actually benefits Gowen if the segregation is deemed to be "disciplinary."

misbehavior, yet he was held in segregation for more than four months.

To be sure, none of the documents reference any disciplinary charge for misbehavior. In their briefing, defendants once refer to his ICC hearing as a "disciplinary hearing" (Defs.' Mem. Supp. Mot. Dismiss 3, Dkt. No. 29), and they also note that there must have been some basis to label him a management problem. But Gowen's complaint alleges that he did nothing, and neither defendants nor the attached paperwork from the ICC reflect what, if anything, Gowen allegedly did to earn that label. Nor does the paperwork explain why his months-long placement in segregation was a legitimate, non-arbitrary response to whatever he did.

Defendants rely on Gowen's designation as a "management problem" as being the reason. Notably, though, the basis for his designation as a "management problem" is not explained. Taken together with Winfield's "ringleader" comment, it appears to be based on alleged conduct by Gowen and thus might be disciplinary. Certainly, no other reason is set forth in the paperwork.

Furthermore, the notation that an individual is a "management problem" does not, by itself, convey what conduct or events underlie that assessment. Thus, this case—at least based on the information alleged in the complaint—differs from others where that label was applied, but was supported by other information. *E.g.*, *Burts v. Slagle*, No. 1:04CV59-MU-02, 2007 WL 880609, at *1 (W.D.N.C. Mar. 21, 2007) (describing that plaintiff was classified as a "management problem" where his inmate file contained numerous documents indicating he had behavioral problems, and had been sanctioned for rules violations, including violent behavior toward officers and other inmates); *Peters v. Blue Ridge Reg'l Jail*, No. Civ. A. 7:06-CV-00595, 2006 WL 3761624, at *1 (W.D. Va. Dec. 21, 2006) (noting that inmate, a diabetic, was referred to as a "management problem" and confined or closely guarded in order to prevent him from

obtaining sweets and other foods incompatible with his condition); *Nelson v. Hamilton*, No. 2:03-CV-00741-JBF, 2005 WL 3955448, at *2 (E.D. Va. Feb. 10, 2005) (noting that supervisor had labeled plaintiff a "management problem" because he was "attempting to create a group effort involving other inmates to burden staff by lodging frivolous complaints against the medical staff").

Given the vagueness of what "management problem" meant as applied to Gowen, the lack of explanation in the ICC's decision, and Gowen's assertion that he did nothing to indicate he was a management problem and that there was no incident or disruption that triggered his being investigated, his placement in segregation for more than four months under very restrictive conditions plausibly could be considered "excessive" in relation to the stated objective. *See Williamson*, 912 F.3d at 163, 179 (concluding that there were disputes of fact precluding summary judgment for defendants where plaintiff pretrial detainee was held in solitary confinement for more than three years as a result of a "single incident of unrealized and unrepeated threats"); *Tate*, 791 F. App'x at 389 (reversing grant of summary judgment on similar facts, where detainee was confined for eighteen months after his escape plot was discovered). The time Gowen was kept in segregation was shorter than in *Williamson* or *Tate*, but in those other cases, there was at least specific conduct arguably justifying the segregation for some period of time. Here, at least according to the complaint, Gowen did nothing and no specific justification was given for the segregation, beyond his being a "management problem."[7] Put differently, because the rationale for his placement is entirely unclear at this point, it is at least plausible—viewing the allegations of the complaint in a light most favorable to Gowen, it was

---

[7] At summary judgment, defendants may well be able to explain why Gowen was a management problem or otherwise explain what the justification was for his placement in segregation. But the paperwork attached to the complaint does not provide an explanation, and Gowen alleges that no explanation was given to him.

not "reasonably related to a legitimate non-punitive governmental objective" or was otherwise excessive, and thus, that it was punitive. Defendants' motion to dismiss Gowen's substantive due process claim will be denied.

### 2. Gowen's Procedural Due Process Claim

In light of the court's conclusion that the complaint plausibly alleges that segregation was imposed for a punitive reason, it is at least plausible that the procedural requirements of *Wolff* were not satisfied. As already noted, *Wolff* requires "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454. The notice here informed Gowen that he was being referred to the ICC, but it did not provide any reason for that referral except that he was a "management problem," which—as already discussed—is vague and does not explain what Gowen did to warrant discipline.

As to the second requirement, a hearing occurred (albeit after Gowen had already been confined to segregation for more than a month),[8] but Gowen contends that he was not permitted "present his case," contrary to the ICC hearing report. Gowen also alleges that he specifically requested two witnesses, but they were not present or otherwise permitted to testify. The paperwork states that the witnesses were "unavailable," but it offers no additional explanation for why these witnesses were unnecessary or unimportant, or why the hearing could not be postponed in order to obtain statements from them. *See Brown v. Braxton*, 373 F.3d 501, 505

---

[8] Prison officials are entitled to segregate a detainee before a hearing for security reasons if they provide the detainee "with at least an informal, nonadversary review of the information supporting segregation, including submissions from the detainee, within a "reasonable time" thereafter. *Williamson*, 912 F.3d at 184.

11

(4th Cir. 2004) (explaining that prison officials have discretion to deny a request for certain witnesses or evidence without running afoul of *Wolff*, so long as the denial is based on a "legitimate penological interest"). Moreover, as Gowen points out, the hearing was held more than a month after the initial notice was given, so it is curious that it could not be held on a date when Gowen's requested witnesses were available.

Third and finally, the written reasons for the statement again rely on the generic phrase of Gowen being a "management problem," without any further explanation. It is at least plausible that this did not satisfy the *Wolff* requirement of the evidence relied on and the reason for the decision.

For these reasons, the court concludes that Gowen has plausibly stated a procedural due process claim against the defendants involved in the decision to place him in segregation.[9] Accordingly, the court will deny defendants' motion to dismiss as to the due process claims, except that it will grant it as to any official-capacity claims for damages, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and grant it as to defendant Enochs.

With regard to Enochs, the complaint alleges that all defendants except Enochs played some role in the decision to refer Gowen to the ICC and place him in segregation. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock*

---

[9] Even if the segregation was imposed for administrative reasons, rather than disciplinary ones, it is at least plausible that adequate notice under *Hewitt* was not given. Gowen received a document stating that he was being given notice that a hearing before the ICC would occur, and he signed a written form acknowledging that fact. But the only reason provided for the hearing was that he was being "investigated" as a "management problem." As discussed, the notice does not provide any other details or indication of the grounds for his being labeled as such.

The court notes, however, that it is unpersuaded by Gowen's related arguments that: (1) the initial form he was given was not adequate notice because it did not contain a date and time for the hearing; and (2) another notice was required because he did not waive the 24-hour requirement on the referral form. (*See* Pl.'s Opp'n ¶¶ 44–45.) These arguments are based on a mistaken understanding of the facts and the law. The notice required by the law is not notice of a date and time for a hearing, but notice of the charges or reasons for the anticipated segregation. *See Williamson*, 912 F.3d at 197–98. Also, based on the plain language of the referral form, Gowen's refusal to waive 24-hour notice meant that the earliest the hearing could be held was 24 hours after he was given the form; it did not mean that he was thereafter entitled to be notified at least 24 hours prior to the hearing, once it was scheduled.

*v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). There are no allegations supporting a finding that Enochs played any role in the decision to place Gowen in segregation, to keep him there, or in otherwise subjecting him to conditions plausibly constituting punishment.[10] Thus, the due process claims against Enochs will be dismissed.

### 3. Qualified Immunity

For like reasons, defendants have not shown an entitlement to qualified immunity on Gowen's due process claims at this stage of the case. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The burden of proof is on the party seeking qualified immunity. *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018).

In determining whether an official is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry. *Smith v. Ray*, 781 F.3d 95, 100 (4th

---

[10] The only alleged involvement by Enochs was that, while Gowen was in segregation, Enochs instructed staff to take away recreation privileges on one occasion, and those privileges were taken away for "a little over a week." (Compl. ¶ 55.) This type of minor deprivation, for such a limited amount of time, does not constitute "punishment," so as to render Enochs liable for a violation of Gowen's constitutional rights. *Dilworth*, 841 F.3d at 252 (noting that *Bell* excluded from punishment "de minimis" levels of imposition and citing to cases where a restriction was held to be de minimis and thus not trigger due process protections, *e.g.*, denial of phone calls and mattresses for less than 24 hours); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that a § 1983 claim will lie against a prison official only where the plaintiff alleges personal involvement by that official).

Cir. 2015). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong asks whether the right was "clearly established" at the time of the defendant's conduct. *Id.* If the answer to either prong is "no," the official is entitled to qualified immunity.

As already noted, Gowen has plausibly alleged a due process violation; thus, it is at least plausible that his constitutional rights were violated by defendants. As to the second prong, *Williamson* itself noted that it was clearly established, before the events here, that pretrial detainees could not be punished, per *Bell*. 912 F.3d at 187. It was also clearly established that no pretrial detainee could be disciplined without the level of due process required by *Wolff*. *Id.* at 188. And, as already discussed, there is at least a question at this point as to whether Gowen's placement in segregation was disciplinary and, if so, whether he was given all the protections owed him under *Wolff*. Thus, on the basis of the allegations in the complaint, the court cannot conclude that defendants are entitled to qualified immunity.

## C. First Amendment Claim Against Enochs and Winfield Based on Failure to Answer Grievances

Gowen's First Amendment claim against Enochs and Winfield based on their alleged failures to respond to his grievances fails to state a claim. A failure to respond to a grievance does not give rise to a constitutional claim. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("*Booker II*") ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."); *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not

actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Thus, any claim against Enochs and Winfield arising simply from their participation in the grievance process or failure to respond to grievances must be dismissed.[11]

**D. Retaliation Claims**

In his final claim, Gowen alleges that all defendants retaliated against him for filing grievances and "encouraging others to file [and] stand up for their rights." (Pl.'s Opp'n ¶ 17.) The retaliation consisted of removing him from general population and holding him for more than a month before his ICC hearing, the ICC's decision to place him in administrative segregation for 90 days, and the continued deprivation of his recreation time, showers, and other privileges.

To succeed on his First Amendment retaliation claim, Gowen must establish that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("*Martin II*") (citing *Martin v. Duffy*, 858 F.3d 239, 249) (4th Cir. 2017)). Moreover, the

---

[11] Gowen argues that he is required to exhaust in order to bring this lawsuit, but he was prevented from doing so because of defendants' failures to respond to his grievances. (Pl.'s Sur-Reply at 2–3.) If defendants were seeking dismissal based on a failure to exhaust, then these issues would be relevant to whether he had properly exhausted. Presently, however, defendants have not so argued, and there is no separate, independent claim based on the failure to respond to his grievances.

court must treat an inmate's claim or retaliation by prison officials "with skepticism," *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Conclusory allegations of retaliation are insufficient to survive dismissal. *See Adams*, 40 F.3d at 74 (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation).

As to the first element, prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker II*, 855 F.3d at 541. Thus, Gowen's filing of grievances satisfies the first element. His assisting of other prisoners does not, however, because he has no constitutional right to encourage other inmates to file legal claims or encourage them to complain. *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (explaining that the plaintiff's retaliation claim failed because he "enjoys no constitutional right to help another inmate file a prison grievance or legal claim"); *Neal v. Stouffer*, Civil Action No. PJM-12-524, 2013 WL 693036, at *6 (D. Md. Feb. 25, 2013) (collecting authority holding same).

As to the second element, and to the extent that his placement in segregation was disciplinary, Gowen has plainly alleged that he did nothing to warrant segregation and had not engaged in any misbehavior. Arguably, then, any allegation of misconduct was false. The bringing of a false disciplinary charge unsupported by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights." *See Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014). For purposes of the motion to dismiss, then, the court concludes that Gowen has plausibly alleged facts to satisfy the second element. Defendants do not argue to the contrary. Likewise, defendants do not argue that Gowen's placement in administrative segregation is insufficient to constitute an "adverse

16

action" for purposes of the second element. For purposes of this opinion, then, the court thus assumes that a short-term (or months-long) placement of a pretrial detainee in administrative segregation could satisfy the second element of a retaliation claim, which requires an action by defendant that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Defendants' arguments on retaliation focus instead on the third element. They contend that Gowen's retaliation claim is supported only by conclusory and speculative allegations as to causation. They first note that he fails to allege that any of the defendants knew he had filed any grievances. In his response, Gowen alleges that he satisfied his pleading burden by alleging that grievances are submitted to persons with certain titles and identifying which defendants held which titles. (Pl.'s Opp'n ¶¶ 20–21.) Even assuming he had pled that all of the defendants *knew* he had filed grievances, however, he does not offer any facts to connect his filing of grievances to the decision to refer him to the ICC or the decision of the ICC committee itself.

In addressing the third element of causation, this court must apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *Martin II*, 977 F.3d at 299. Under that framework, once the prisoner-plaintiff shows that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action," then the burden shifts to the defendant to prove a permissible basis for taking that action. *Id.* at 300. "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'" *Id.* (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)). If, on the other hand, the defendant carries that burden and shows he would have taken the same

action if the inmate had engaged only in misconduct and not protected conduct, then "courts logically infer legitimate reasons caused the adverse action, not retaliatory ones." *Id.* at 302 (citing *Greene*, 660 F.3d at 979–80).

To establish the third element, Gowen must show that his protected conduct was a substantial or motivating factor in his being placed in segregation. *See Martin II*, 977 F.3d at 300. Notably, mere temporal proximity is generally "too slender a reed on which to rest a Section 1983 retaliatory [ ] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). Here, Gowen has offered no facts to connect the filing of his grievances to any of the actions taken against him. Thus, he has not plausibly alleged that his filing of grievances was a substantial or motivating factor for his placement in segregation.

At most, based on the entirety of his allegations, Winfield placed Gowen in segregation and referred him to the ICC because he was a "ringleader" and somehow encouraged others to complain. As Wingate allegedly expressed it, the jail had a "place" for "ringleaders" and alluded to Gowen "want[ing] to be a ringleader." Wingate's statement does not tie the referral to the ICC to the filing of any grievance. Instead, it suggests a link, if at all, to whatever conduct by Gowen was interpreted by Wingate as Gowen's trying to be a "ringleader."

Indeed, in his opposition, Gowen focuses more on this ground as the basis for his retaliation claim. (Pl.'s Opp'n ¶ 17.) He alleges that he was subjected to segregation for "encouraging others to file [and] stand up for their rights." (*Id.*) As already noted, however, there is no constitutional right to encourage other inmates to complain or to assist them in filing grievances.[12] *Tighe*, 100 F.3d at 43; *Neal*, 2013 WL 693036, at *6. Thus, even if the

---

[12] To the extent that there is any such right, it was not clearly established at the time of the events alleged in the complaint, as evidenced by the law cited in the paragraph in the text. Thus, defendants are, at a minimum, entitled to qualified immunity to the extent that any retaliation claim is based on Gowen's encouraging others to file complaints.

segregation decision against him was based on that conduct, that un-protected conduct does not support a claim of a constitutional violation.

For the foregoing reasons, defendants' motion to dismiss the retaliation claim will be granted.

### III. CONCLUSION

Gowen's complaint adequately states a due process claim against all defendants except Enochs. Accordingly, defendants' motion to dismiss will be denied in part and Gowen's § 1983 claim alleging a due process violation will be permitted to go forward, except as to Enochs, but only against defendants in their individual capacities. Defendants' motion to dismiss will be granted as to all other claims.

An appropriate order will be entered.

Entered: March 15, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge